**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| CORRINA DEMARIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  1:20-CV-110 RLW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Corrina Demaris brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. For the reasons that follow, the decision of the Commissioner is affirmed.

**I.  Procedural History**

Plaintiff filed her applications for DIB and SSI on June 21, 2017.  (Tr. 14, 23).  Plaintiff alleged she had been unable to work since February 24, 2017, due to tremors, benign paroxysmal positional vertigo (BPPV), carpal tunnel, chorioretinitis in right eye, dizzy spells, plantar fasciitis, bi-polar disorder, high blood pressure, and chronic migraines. (Tr. 186). Plaintiff's applications were denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared with her husband, but without counsel, for an initial hearing on

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

February 5, 2019. (Tr. 31-80).  The ALJ informed Plaintiff of her right to representation, but Plaintiff chose to appear and testify at the hearing without the assistance of counsel.  Plaintiff testified concerning her medical conditions, daily activities, functional limitations, and past work.  Id.  The ALJ also received testimony from Plaintiff's husband and a vocational expert ("VE") Holly Berquist Neal.   Id.   On May 16, 2019, the ALJ issued an unfavorable decision finding none of Plaintiff's medically determinable impairments significantly limited her ability to perform basic work activities and, therefore, she was not disabled. (Tr. 14-23). On June 5, 2019, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 150-52). On March 24, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff, who is now represented by counsel, claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Plaintiff argues the ALJ violated the de minimis standard at step two when he found Plaintiff's medically determinable impairment of tremors was non-severe and terminated the sequential evaluation.  Plaintiff requests that the decision of the Commissioner be reversed, and the matter be remanded for an award of benefits or for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.  Legal Standard

To be eligible for DIB and SSI under the Social Security Act, a plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines

disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his [or her] ability to do basic work activities.  If the claimant's impairment is not severe, then he [or she] is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations."  Martise v. Astrue, 641 F.3d 909, 923 (8th

Cir. 2011); see also  20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R.  § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated May 16, 2019, the ALJ applied the above analysis and found Plaintiff had not engaged in substantial gainful activity since February 24, 2017; Plaintiff had the medically determinable impairments of essential tremors, generalized anxiety disorder, BPPV, and uveitis and peripheral vascular disease of the right eye, none of which the ALJ found to be severe impairments.  The ALJ concluded Plaintiff did not have an impairment or combination of impairments that has significantly limited, or is expected to significantly limit, Plaintiff's ability to perform basic work-related activities for 12 consecutive months.  The ALJ did not proceed to steps three through five, instead he concluded his analysis at step two and found Plaintiff was not disabled. (Tr. 23).

In the instant action, Plaintiff only challenges the ALJ's findings regarding her tremors. The Court, therefore, limits its review to the ALJ's findings and conclusions regarding Plaintiff's tremors and their impact on Plaintiff's ability to perform work-related activities.

With regard to Plaintiff's tremors, the ALJ noted that "while [Plaintiff] reported tremors so bad that she cannot write or cook, the medical evidence of record does not show a corresponding level of severity."  (Tr. 19) (internal citation omitted).  The ALJ examined Plaintiff's medical records and wrote the following:

> During [Plaintiff]'s consultive exam with Chul Kim, M.D., in August 2017, [Plaintiff] reported that she began to have tremors in 1998 after looking at a copying machine, but two prior MRIs were normal.  Though Dr. Kim stated that the claimant had a tremor in her head while sitting and in her whole body when she stood, and indicated that she had much tremor in her hands while writing her name, she exhibited normal handgrip and fine finger movement, had a stable gait, and was able to bear full weight on her right and left legs individually while shaking.

> [Plaintiff] exhibited a full body tremor in March of 2018, and was provided a neurological referral. A neurologic examination conducted in April of 2018 showed [Plaintiff] to have a postural tremor (worse in the right side) with mild exacerbation with action. However, apart from the observed postural tremor and difficulty with tandem walk, [Plaintiff]'s neurological examination was normal.  Her cranial nerves are normal, she had full strength, her sensation to light touch and vibration was normal, her coordination, to include rapid alternating movements, was normal, her gait and stance were normal, and her reflexes were brisk but symmetric. The claimant was prescribed new medication and told to follow up in six months.

> [Plaintiff] did not exhibit tremors in May of 2018 during a doctor's appointment with her primary care provider. Though she reported a constant tremor to her primary care provider in June of 2018, no tremor was observed, and she did not report or exhibit tremors to Victor Lawrineko, M.D., during medical appointments in May and June of 2018.   While [Plaintiff] reported tremors in August and November of 2018 and January of 2019, she did not exhibit them, and she did not report or exhibit tremors during a doctor's appointment in February 2019.

(Tr. 19) (internal citations omitted).

The ALJ noted that Frederic Simonwitz, M.D., a non-examining consulting medical source, had assessed Plaintiff's tremors as severe in August 2017.  Dr. Simonwitz found in spite of her impairments, that Plaintiff was capable of performing light work with no exposure to hazards, occasional balancing and climbing of ramps and stairs, and no climbing or ladders, ropes, and scaffolds.  The ALJ discounted Dr. Simonwitz's opinion that Plaintiff's tremors were severe and wrote:

> While I concede that [Plaintiff] has been diagnosed with essential tremors, the medical evidence of record does not support a finding that they are severe. A neurologic examination conducted in April of 2018 showed [Plaintiff] to have a postural tremor with a mild exacerbation with action. However, apart from the observed postural tremor and difficulty with tandem walk, the claimant's neurological examination was normal, and [Plaintiff] was prescribed medication and told to follow up in six months.

(Tr. 23) (internal citations omitted).  The ALJ noted the consulting physician was non-treating, non-examining, and his evaluation was based on a review of available medical records at the time. The ALJ found that while Dr. Simonwitz's opinion was generally consistent and supported by a reasonable explanation and the available evidence, he did not have the same opportunity as the ALJ to review the evidence submitted through the date of the hearing or to see and hear the claimant's testimony in person.  (Tr. 22).

## IV.  Discussion

In her Brief in Support of Complaint, Plaintiff argues the ALJ violated the de minimis standard at step two by finding Plaintiff's medically determinable impairment of tremors to be non-severe and terminating the sequential evaluation at step two.   Plaintiff argues the ALJ improperly relied on the presence of normal neurological examination findings, despite there being abnormal findings, and he discounted the only medical opinion in the record regarding her physical functional limitations.  Defendant responds that the ALJ properly evaluated the medical opinions and findings under the regulations.

### A.  Step Two Standard and Applicable Law Regarding Medical Experts

At step two of the sequential evaluation process, the ALJ must determine if the claimant's impairments are severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  For an impairment to be severe, the impairment must significantly limit the claimant's ability to do basic work activities and have lasted or can be expected to last for a continuous period of not less than twelve months.  Id., 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   Basic work activities include the ability to understand,

carry out, and remember simple instructions, use judgment, respond appropriately to supervision, coworkers and usual work situations, and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1520(b), 416.920(b). The U.S. Supreme Court held that the standard of proof for a "severe medical impairment" is only a "de minimis" standard, with a low threshold. Bowen, 482 U.S. at 158. "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." Id. (quotations omitted). See also Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987) (adopting and applying de minimis standard). "Severity is not an onerous requirement for the claimant to meet . . . but it is also not a toothless standard," and the Eighth Circuit has "upheld on a number of occasions" the Commissioner's finding that a claimant failed to make the threshold showing in step two. Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) (finding substantial evidence existed in record to support ALJ's conclusion that impairments were not severe). See also Page v. Astrue, 484 F.3d 1040, 1043–44 (8th Cir. 2007) (finding substantial evidence supports the ALJ's determination that the claimant's psychological limitations are non-severe); Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003) (upholding determination that claimant's PTSD had no more than a minimal effect on his ability to work); Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001) (affirming ALJ's termination of evaluation at step two because of substantial evidence in record that claimant did not suffer from severe impairment that had more than a minimal effect on his ability to work); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (same); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (same).

As for the evaluation of medical opinions, for claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c. The new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision.[2]  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how he considered the remaining factors.  Id.; see also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

---

[2]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

**B.**      **The ALJ's Evaluation of Evidence of Plaintiff's Tremors**

Plaintiff argues that the ALJ failed to provide sufficient reasons for finding her tremors to be non-severe.  Plaintiff points to the fact that the ALJ relied on treatment records that either did not reveal tremors upon examination or where Plaintiff did not report tremors.   Plaintiff notes that the ALJ cited treatment records where no tremors were observed or reported from May, June, August, and November 2018, and January and February 2019, but according to Plaintiff, the record shows she did exhibit and report tremors at visits in March 2018, April 2018, and June 2018. (Tr. at 397, 314-315, 306).   Plaintiff also argues that the ALJ failed to explain why the presence of tremors on examination findings should be overridden by other normal examination findings. Plaintiff also faults the ALJ for discounting the medical opinion of Dr. Simonwitz, the agency consultant.

### 1.      Inconsistencies in the record

In his decision, the ALJ noted Plaintiff's treating physicians did not observe tremors on a number of occasions, even when Plaintiff reported them, and the ALJ's statement is consistent with the record. (Tr. 19).  Despite Plaintiff's numerous medical visits for tremors and her other conditions, there are only three medical examinations in the record at which a healthcare provider observed tremors during an appointment. (Tr. 297, 315, 395-97).   The first instance where a medical provider noted an observation of tremors was in August 2017, during the consulting visit with Dr. Kim.  (Tr. 297).  Plaintiff reported to Dr. Kim that she developed tremors in 1998 when she looked at a copy machine.  She reported the tremor started in her head and has gotten worse, involving her whole body.  Dr. Kim noted past MRIs of Plaintiff's brain were normal.  A physical exam revealed normal handgrip and fine finger movement.  Plaintiff bore weight on her left leg for two-three seconds with whole body shaking, although Plaintiff's gait was stable.  Dr. Kim stated that the neurological exam was "non-specific," but Plaintiff had a tremor in her head

continuously, and tremor when she stood, and a tremor when writing.  (Tr. 297).  Notably, Dr. Kim did not opine that Plaintiff's tremors impaired her ability to do work or daily activities.

The second instance in the record where tremors were observed was in Spring 2018.  On March 20, 2018, Plaintiff was seen by here treating primary care physician, Richard Hester, M.D. (Tr. 315).  Although Plaintiff had seen Dr. Hester on three prior occasions on October 17, 2017, November 16, 2017, and February 20, 2018, Dr. Hester's first notation of observable tremors was from the visit on March 18, 2018, at which Plaintiff's chief complaint was noted to be "Pt needs a referral to a neurologist." (Tr. 311). Dr. Hester indicated Plaintiff had a full body tremor, although her gait was normal, and she was ambulating normally. (Tr. 315).  No other abnormalities were noted at the time.  Plaintiff returned to Dr. Hester on April 3, May 10, June 18, August 1, and November 1, 2018, and Dr. Hester made no notes that he observed tremors on examination.[3]  The neurologic observations from Dr. Hester's physical examinations on these dates were normal. Significantly, Dr. Hester never indicated Plaintiff had any limitations due to tremors.

The third instance when a medical provider observed Plaintiff's tremors was in April 2018, during Plaintiff's neurological consult.  Plaintiff was seen by James Giles, M.D., a neurologist, for evaluation of her tremors.  Dr. Giles noted plaintiff had "no resting tremor," but she did exhibit "low amplitude, high frequency" tremors affecting her arms and neck. (Tr. 396-97). The doctor found there were no "parkinsonian" features, and that Plaintiff had "fluent speech," writing was intact, her neck had a full range of motion, her motor strength was rated "5/5 throughout," with normal tone in upper and lower extremities, finger and toe tapping were normal, coordination, including finger to nose and rapid alternating movements, were normal, as was her sensation and

---

[3] On June 18, 2018, Dr. Hester noted Plaintiff reported having "chronic tremors," but the doctor did not note that he observed them during the visits.  (Tr. 306).  Under the heading "Neurologic," Dr. Hester described Plaintiff having normal gait and station and she was ambulating normally. (Tr. 306).

reflexes.  (Tr. 396-97).   Dr. Giles noted Plaintiff's gait and stance were normal, although her tandem gait "is difficult."  (Tr. 397).   Dr. Giles wrote that Plaintiff reported her tremors were "longstanding," and she described them as being "bothersome to her due to social stigma."  (Tr. 395).  No other limitations due to tremors were noted.  Dr. Giles prescribed medication, which he noted could be adjusted over the phone.  He recommended a follow up in six months.  There is nothing in the record indicating Plaintiff returned to Dr. Giles.

In his decision, the ALJ accurately described these three encounters.  Plaintiff states that tremors were observed by her physician in June 2018.  The Court reviewed the medical records from Dr. Hester on June 18, 2018. (Tr. 306).  On that date, Plaintiff reported a history of chronic tremors, but it was not noted that tremors were observed.  Dr. Hester that wrote Plaintiff's appearance was normal and her gait was normal.  (Id.)   The notes of Victor Lawrinenko, M.D., also a treating physician, show that Plaintiff actually denied tremors in the review of systems on multiple occasions (Tr. 354, 356-57, 416).  Both Dr. Hester and Dr. Lawrinenko routinely observed that Plaintiff had a normal gait and station. (Tr. 311, 319, 323, 356-57).  As discussed above, there is only one notation from Dr. Hester indicating he observed tremors, and he never opined that they limited her in any way.  Dr. Giles did observe tremors in Plaintiff's arms and neck, although not when she was resting, but he did not note any limitation, except that Plaintiff found her tremors to be "bothersome" for social reasons.  More importantly, none of the doctors' examination notes suggest that the tremor would prevent Plaintiff from engaging in basic work-related activities.  See SSR 85-28, 1985 WL 56856.  Such evidence supports the ALJ's determination that Plaintiff's tremors were not severe.  See Wright v. Colvin, 789 F.3d 847, 853 (8th Cir. 2015) (ALJ may disbelieve self-reporting based on inherent inconsistencies in the record).

In addition, there was a lack of medical follow up, which is at odds with Plaintiff's complaints of significant limitation due to tremors.  As the ALJ noted, Plaintiff was instructed to

follow up with the neurologist, Dr. Giles, after six months.  (Tr. 19, 23, 397).  Plaintiff testified she did not visit Dr. Giles again because he was a resident, and she did not like being seen by students.  She also stated she did not have the money to return to follow up. (Tr. 56).  But there is no evidence in the record Plaintiff was denied treatment due to finances or any indication that she sought treatment with a different neurologist. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (record contained no evidence that claimant was denied treatment for financial reasons). The ALJ noted the lack of continuing treatment, which is supported by the record.

In addition to inconsistencies in the medical records, there were inconsistencies in Plaintiff's reported daily activities.  Plaintiff claimed her tremors prevented her from tasks such as cooking and writing, but these limitations are not borne out by the record. (Tr. 19, 213, 215). Plaintiff's self-report of daily activities is not consistent with her alleged inability to perform basic work tasks.  For instance, Plaintiff reported that she did laundry, dishes, dusting, vacuuming, and mopping floors. (Tr. 215).  While the ability to perform household activities is not itself dispositive of the question of disability, Plaintiff's ability to perform household tasks is inconsistent with her husband's testimony that Plaintiff can do little more than sleep during the day. (Tr. 64).  See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (activities such as light housework and visiting with friends are not alone sufficient to discredit subjective complaints but may support the ALJ's decision when taken with the record as a whole).  Additionally, despite claiming that she could not write, Plaintiff provided pages of hand-written forms to support her claim for disability. (Tr. 196-223).

The ALJ found Plaintiff had the medically determinable impairment of tremors, but they did not significantly limit her ability to perform basic work-related activities for 12 consecutive months.  The ALJ based this conclusion on the fact that Plaintiff's claim of significant impairment due to tremors was inconsistent with her course of medical treatment, and the limited observations

by medical providers, as well as her reported daily activities.  The Court has reviewed the record

and finds the ALJ's conclusion are supported by substantial evidence in the record as a whole.

### 2.    Evaluation of opinion from non-examining, consulting physician

Plaintiff also argues that ALJ erred in discounting the opinion of agency consultant, Dr.

Simonwitz, who found Plaintiff had a severe impairment.  Dr. Simonwitz reviewed Plaintiff's

medical records on August 31, 2017.  When he conducted his review, he did not have medical

records from Dr. Hester or Dr. Giles, although he did have records from the examination Dr. Kim

conducted on August 30, 2017.  Dr. Simonwitz noted that Dr. Kim observed tremors during her

examination, although he noted Plaintiff had a full range of motion, normal handgrip, and fine

motor movement, and she was able to walk on heels and toes and squat.  He noted Plaintiff's exam

was non-specific as to sensory, motor, reflex, and muscle mass.   Dr. Simonwitz found Plaintiff's

allegations as to her limitations were "not consistent with exam findings, therefore allegations are

considered partially consistent.  [Plaintiff] also demonstrates atypical history, with onset of tremor

when looking at a copy machine." (Tr. 100).  He listed Plaintiff as having severe "other disorders

of the nervous system," although he found her capable of performing light work with some

functional limitations.  (Tr. 96, 98-99).

The ALJ conceded Plaintiff had been diagnosed with essential tremors, but he did not find

them to be a severe impairment.  In discounting Dr. Simonwitz's opinion, the ALJ contrasted the

doctor's findings with the treatment notes from Dr. Giles, who examined Plaintiff in April 2018.

The ALJ noted that apart from the tremors and difficulty with tandem walk, Dr. Giles's exam was

normal.  This is an accurate characterization of the record.  In fact, Dr. Giles did not find Plaintiff

to have any limitations as a result of her tremors, which were described as "longstanding" and

merely "bothersome."  (Tr. 396-97).  The ALJ also noted Dr. Simonwitz was a non-treating, non-

examing medical source, and although he had a comprehensive understanding of agency rules of

regulation, he did not have the opportunity to review medical records through the date of the hearing or observe Plaintiff in person and hear her testimony.

Under the regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and these are the only two factors an ALJ must address when explaining the weight he or she assigned a medical opinion. 20 C.F.R. § 404.1520c(b)(2), see also Brian O., 2020 WL 3077009 at *4. When evaluating a medical opinion, an ALJ should consider the other factors, but it is not error to omit discussion of these factors in a written decision. Id.  In this case, the ALJ complied with the regulations when evaluating Dr. Simonwitz's opinion.  The ALJ found Dr. Simonwitz's opinion was not consistent with or supported by medical evidence in the record, particularly treatment notes from a neurologist, whose notes were entered into the record after Dr. Simonwitz's review. As discussed above, and as pointed out by the ALJ in his decision, numerous inconsistences in the records undermine Plaintiff's claim that her tremors were severe. The Court finds the ALJ properly evaluated Dr. Simonwitz's medical opinion.

## V.    Conclusion

In sum, the Court has carefully reviewed the record and finds there is substantial evidence supporting the ALJ's determination that Plaintiff's tremors are not medically severe.  There is substantial evidence in the record that Plaintiff's tremors are only a slight abnormality.  While Plaintiff stated she has had tremors since 1989, in the record they were first observed by a medical doctor when Plaintiff was examined by Dr. Kim, an agency doctor, in August 2017.  Plaintiff's treatment for tremors has been variable and uneven.  While she made complaints of tremors during a number of medical examinations with her treating physicians, they were often not observed. Furthermore, following her neurology consult, Plaintiff discontinued treatment for her tremors and did not return to see a neurologist as directed.  As for the agency expert, Dr. Simonwitz based his

opinion on limited medical records.  Dr. Simonwitz found Plaintiff's tremors were severe based on the observations of Dr. Kim, a consulting physician, who saw Plaintiff one time.  Dr. Simonwitz did not have medical records from Dr. Hester, Plaintiff's treating primary care physician, or Dr. Giles, Plaintiff's treating neurologist.  Additionally, Plaintiff's self-proclaimed limitations from her tremors are not consistent with her daily activities and other observations the ALJ made.  Even under the low threshold of the "de minimis" standard, Plaintiff has not shown that her tremors significantly limit any basic work activity. <u>Bowen</u>, 482 U.S. at 158.

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.


_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this __21st___ day of September, 2021.